IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD BERNSTEIN et al., | No. C 05-1528 SBA |
| Plaintiffs, | **ORDER** |
| v. | |
| THE TRAVELERS INSURANCE COMPANY et al., | |
| Defendants. | |

This matter comes before the Court on Defendants' First Motion for Partial Summary Judgment [Docket No. 43]. Having read and considered the arguments presented by the parties in their moving papers, as well as the arguments presented by counsel at the hearing, the Court HEREBY GRANTS IN PART and DENIES IN PART Defendants' First Motion for Partial Summary Judgment.

**BACKGROUND**

Plaintiff United Signs, Inc. ("United Signs") is a sign making business wholly owned by Plaintiffs Ronald and Toni Bernstein. It is located at 727 Airport Boulevard, South San Francisco, San Mateo County, California. United Signs, and Ronald and Toni Bernstein (collectively, "Plaintiffs") purchased a commercial property and liability insurance policy from defendant The Travelers Indemnity Company of Connecticut[1] for the policy period of October 19, 2000 to October 19, 2001.[2] First Amended Complaint ("FAC"), ¶ 1. Beginning in March 2001 and continuing through at least June of 2001, while the policy was in effect, United Signs' building was damaged by water intrusion and mold. FAC ¶ 11(a). The water intrusion and mold were caused by damage to the building's roof which was

---

[1] The other defendants The Travelers Insurance Company, The Travelers Indemnity Company, and The St. Paul Travelers Companies, Inc. are either parent companies or other relations of the issuer of the policy. All defendants have joined in the Motion for Partial Summary Judgment and are collectively referred to as "Defendants" or "Travelers."

[2] The parties agreed to a short extension of the policy until January 17, 2002. Declaration of David Goble in Support of Defendants' First Motion for Partial Summary Judgment ("Goble Decl."), Ex. E.

1  in turn caused by tortfeasors. *Id.* As a result, Plaintiffs suspended their operations in the building and
2  vacated the property in June 2001. *Id.* ¶ 14. In July 2001, a remediation contractor retained by
3  Defendants to assist in the temporary relocation of the business and repair of the building, caused
4  additional damage to the building through the overflow of the building's bathroom. Declaration of
5  David Goble in Support of Defendants' First Motion for Partial Summary Judgment ("Goble Decl."),
6  Ex. G at 2. Additionally, some personal property was damaged, lost or stolen while the contractor was
7  moving it to another location. *Id.* In May 2001, Plaintiffs gave notice of a claim to Defendants for
8  damage to the building, damage to contents in the building, and loss of business income/extra expenses.
9  FAC ¶¶ 11-14. In August 2002, after testing, repairs and mold remediation, Plaintiffs were able to
10 return to the building. Goble Decl., Ex. F at 3. As of February 2003, Defendants made payments of
11 benefits to Plaintiffs in the amount of at least $376,387. *Id.* ¶ 24(c). However, Plaintiffs claimed they
12 were owed additional benefits. In accordance with the policy, the parties agreed to an independent
13 appraisal, pursuant to Insurance Code § 2071.[3]

14 Prior to the appraisal, Defendants sent a letter to the appraisers detailing the scope of the
15 appraisal with respect to each of Plaintiffs' claims. Goble Decl., Ex. E. With respect to the damage to
16 the building claim, the letter stated: "The appraisal should calculate the loss to United Signs' building
17 caused by water intrusion during the policy period. The loss should be calculated both on an ACV and
18 on an [sic] RCV basis. The policy period ended on January 17, 2002. Damage caused by water
19 intrusion after that date should not be included in the appraised amounts." *Id.* Plaintiffs never objected
20 to this letter or sent their own letter defining the scope of the appraisal. During the appraisal, the parties
21 submitted briefs and presented evidence. Goble Decl., Exs. F and G. In May 2004, the appraisers
22 issued a unanimous decision. Goble Decl., Ex. H. The cover letter to the decision stated the following:

---

[3] Because Plaintiffs made claims for personal property and business income loss, the policy's Building and Personal Propery Coverage Form and Business Income Coverage Form applied to their claims. Both forms have a similar appraisal clause. The appraisal clause of the policy's Building and Personal Property Coverage Form provides, in pertinent part: "If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. . . . If there is an appraisal, we will still retain our right to deny the claim." Goble Decl., Ex. A at POL 21-22. The appraisal clause of the policy's Business Income Coverage Form provides for the appraisal if the parties "disagree on the amount of Net Income and operating expense or the amount of loss." *Id.* at POL 29.

1   "The panel agreed that the damage to the main shop area, as estimated by Four Star Restoration, fell
2   outside of the policy period. Travelers Insurance has denied coverage for this aspect of United Signs'
3   claims and we, as the appraisal panel, did not include any of these claimed damages in our award." The
4   appraisers awarded Plaintiffs $258,466 for building and personal property damage, $256,092 for lost
5   income and extra expense, $40,860 for personal property damaged by a remediation contractor, AMG,
6   and $54,195 for personal property that was lost, stolen, misplaced or inadvertently discarded. The
7   appraisers left it to the parties to apply any policy limits, deductibles or credits for amounts Defendants
8   had already paid. *Id.* After applying deductibles,[4] and subtracting $376,387.50 that Defendants had
9   already paid Plaintiffs in benefits prior to the appraisal, Defendants paid an additional amount of
10  $131,078.50 to Plaintiffs on May 28, 2004.

**B.     Procedural History**

In February 2005, Plaintiffs filed the present action against Defendants, asserting, *inter alia*, claims for breach of insurance contract, breach of duty of good faith and fair dealing ("insurance bad faith"), negligence, deceit and intentional infliction of emotional distress. FAC ¶¶ 55-76. Defendants now move pursuant to Federal Rule of Civil Procedure 56(d) for partial summary judgment on Plaintiffs' causes of action for breach of contract and insurance bad faith, insofar as these causes of action concern the dispute over Plaintiffs' property damage and business interruption claims. Specifically, Defendants ask the Court to rule that they do not owe Plaintiffs any more benefits for such claims and are not liable for interest or insurance bad faith for allegedly delaying payments.

**LEGAL STANDARD**

**A.     Motion for Partial Summary Judgment**

Under Federal Rule of Civil Procedure 56, a court may properly grant a motion for summary judgment if the pleadings and materials demonstrate that there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[4] Defendants determined that there were three occurrences of building/personal property loss, and withheld $1,000 deductible for each of the three losses. Goble Decl., Ex. K.

*(Left margin: United States District Court, For the Northern District of California)*

248 (1986). Summary judgment may be granted in favor of a defendant on an ultimate issue of fact where the defendant carries its burden of "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

To withstand a motion for summary judgment, the non-movant must show that there are genuine factual issues which can only be resolved by the trier of fact. *Anderson*, 477 U.S. at 250. The nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The court's function, however, is not to make credibility determinations. *Anderson*, 477 U.S. at 249. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.*, 809 F.2d at 631.

If the case is not fully adjudicated by a motion for summary judgment, the court is empowered to grant summary adjudication as to specific issues if it will narrow the issues for trial. *See* Fed.R.Civ.P. 56(d). Rule 56(d) expressly provides that:

> If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Fed.R.Civ.P. 56(d).

## ANALYSIS

### A.   Breach of Contract

In California, an insured's only remedy, if dissatisfied with an appraisal, is to petition the court to vacate or correct the award within 100 days of the service of the award. *See Klubnikin v. California Fair Plan Assn.* (1978) 84 Cal. App. 3d 393. Here, neither party has petitioned the Court to vacate or correct the appraisal. In fact, the time for such a petition has passed, and the parties concede that the award became final. However, Plaintiffs claim that they seek contractual damages arising from two denials of coverage by Defendants that were outside the scope of the appraisal. First, Plaintiffs contend

that the appraisers declined to appraise the damages to the "main shop area" of Plaintiffs' building because Defendants objected that they had already denied coverage for this loss. Second, Plaintiffs claim that although the appraisers determined that Plaintiffs' business interruption loss totaled $256,092, Defendants withheld $6,092 of that sum because they contended that a $250,000 policy limit applied. Plaintiffs further claim that multiple occurrences caused this loss, thus multiple policy limits apply, and they are still owed $6,092. In response, Defendants assert that collateral estoppel applies to the issue of the "main shop area" damages because it was actually litigated and actually and necessarily decided during the appraisal, and the appraisal award was final and on the merits. Defendants also assert that they owe no additional benefits for business interruption loss, because there was only a single occurrence of such a loss.[5]

### *1.     The "Main Shop Area" Loss*

The Court finds that the issue of the "main shop area" loss was actually litigated and necessarily decided during the appraisal, the appraisal award was final and on the merits, and therefore Plaintiffs are barred from relitigating this issue by the doctrine of collateral estoppel.

First, the scope of appraisal regarding this issue was explained to the appraisers as follows: "The appraisal should calculate the loss to United Signs' building caused by water intrusion during the policy period. The loss should be calculated both on an ACV and on an [sic] RCV basis. The policy period ended on January 17, 2002. Damage caused by water intrusion after that date should not be included in the appraised amounts." Goble Decl., Ex. E. Plaintiffs never objected to Defendants' description of the scope of appraisal nor provided their own description. Second, in their appraisal brief, Defendants made the following arguments with respect to this issue:

> The claim under the policy includes not only the cost of repairing the portions of the building affected by the March/April 2001 water incursion, but costs of mold testing, and estimated costs of remediation, in the "shop" – an area of the building which was not affected by that incident. Because the claim which was submitted to Travelers, and which is the subject of this appraisal concerns the roof damage which caused the water incursion in March/April 2001, those costs and estimated costs related to the shop are outside the scope of the loss. Moreover, the only tests which suggest that such remediation is necessary were conducted long after Travelers' policy was terminated.

---

[5] In the Motion, Defendants also argued that the business interruption coverage did not apply on a per-occurrence basis. However, during the oral argument, defense counsel conceded that the coverage did apply on a per-occurrence basis. *See* Transcript at 5:4-6.

5

Goble Decl., Ex. F. at 2. Addressing the "main shop area" claim more specifically, Defendants argued:

> The estimate for $112,497.53 concerns the cost of mold remediation in the shop. That work was recommended on the basis of testing done in mid-2002 – more than six months after Travelers stopped insuring this building. Repeated tests in the shop area before Travelers' coverage ended found no mold warranting remediation. Because there is no evidence that the 2002 testing and remediation plan relates to any covered damage that occurred during the policy period, Travelers denied the claim for Safe Environment's 2002 charges and for Four Star's estimate for the cost of doing the work.

Goble Decl., Ex. F at 2-3.

In turn, in their appraisal briefs, Plaintiffs discussed the claim even more in depth than Defendants did. Plaintiffs' facts and argument regarding the claim took a page and a half of their appraisal brief. Plaintiffs also attached the testing reports to rebut Travelers' claim that tests in the shop area before the coverage ended did not show mold. *See* Goble Decl., Ex. G at 2-4.

Third, after the appraisal hearing and inspection of United Signs' premises, the appraisers issued their award. Goble Decl., Ex. H. In the letter attached to the award, the umpire Steve Tilghman (a neutral appraiser selected by the other two appraisers), stated, in the relevant part: "The panel agreed that the damage to the main shop area, as estimated by Four Star Restoration, fell outside of the policy period. Travelers Insurance has denied coverage for this aspect of United Signs' claims and we, as the appraisal panel, did not include any of these claimed damages in our award." *Id.* at 1.

Finally, this evidence is corroborated by Thomas Leith, one of the appraisers, who declares that "[o]ne of the issues presented to the appraisers in the papers and during the appraisal hearing was whether Travelers owed payment for certain damage to the shop area of United Signs' building. The crux of the dispute was whether the damage occurred during Travelers' policy period. We understood that the parties wanted us to resolve the dispute. We considered the issue and reached a decision. We decided that United Signs had not proven that the damage occurred during the policy period. Accordingly, we did not include the damage in our award." Declaration of Thomas Leith in Support of Defendants' First Motion for Partial Summary Judgment ("Leith Decl."), ¶2-3. Leith also states that he interpreted Tilghman's statement in the letter as accurately reflecting that the panel did deliberate over the issue and did decide it in Defendants' favor. *Id.* ¶ 4.

Consequently, there is no genuine dispute of material fact that the issue regarding damage to the main shop area was actually litigated and actually and necessarily decided.[6] The parties have submitted the issue regarding damage to the main shop area to the appraisers and briefed it extensively in their appraisal briefs. Plaintiffs pointed out that this is their largest claim. The umpire discussed the claim in the letter conveying the award, and one of the arbitrators proffered evidence that the panel did consider and resolve the issue. Since the appraisal award is now final, Plaintiffs cannot relitigate the issue before this Court. *See Klubnikin v. California FAIR Plan Ass'n* (1978) 84 Cal. App. 3d 393, 398 (an appraisal award may only be challenged on limited grounds and only through a petition to vacate or correct the award that is filed within 100 days of the award). Accordingly, the Court GRANTS Defendants' First Motion for Partial Summary Judgment on Plaintiffs' first cause of action for breach of contract insofar as it concerns the dispute over Plaintiffs' "main shop area" loss claim.

### *2.     Business Interruption Loss*

Another basis for Plaintiffs' breach of contract cause of action is that they are entitled to $6,092 in additional appraised (but unpaid) business interruption/extra-expense benefits. Opposition at 11. Specifically, they argue that the appraisal award set Plaintiffs' loss at $256,092. Goble Decl., Ex. H at 3-4. Defendants cited to the policy limit and paid only $250,000. However, according to Plaintiffs, Defendants have contracted to indemnify Plaintiffs' business income/extra expense losses up to a $250,000 policy limit *per each occurrence* of damage or loss to the covered building and/or personal property.[7] Opposition at 11. Plaintiffs further argue that Defendants withheld multiple deductibles on their other claim (for building and personal property damage) based on "three occurrences due to three contents losses." Goble Decl., Ex. K. Plaintiffs claim these three occurrences of building damage/personal property loss translated into three occurrences of business interruption loss, and therefore they are entitled to the $250,000 policy limit per each occurrence, and Defendants should have

---

[6] Plaintiffs also argue that the issue was not necessarily decided. Plaintiffs are incorrect. The appraisers were asked to "calculate the loss to United Signs' building caused by water intrusion during the policy period." Goble Decl., Ex. E. To make that calculation, it was necessary for them to decide when the shop damage occurred. In addition, Leith declares that appraisers did consider and decide the issue. *See* Leith Decl., ¶¶ 2-3.

[7] The appraisers were not requested to – and did not – determine the number of occurrences that caused Plaintiffs' losses.

7

1 paid the additional appraised $6,092.

2 Defendants respond that the fact that there were multiple occurrences of *personal property*
3 *damage* does not compel the conclusion that there were multiple occurrences of *business interruption*.
4 Reply at 5. Defendants argue that there was in fact only one incident of business interruption – the
5 interruption caused by the mold that resulted from the water intrusion into the building through the roof
6 damaged by tortfeasors. This interruption caused Plaintiffs to vacate the building. *Id.* Defendants
7 maintain that the single interruption was already underway when the other two occurrences of building
8 damage/personal property loss occurred.[8] *Id.* Defendants claim that neither of those losses which
9 occurred after United Signs' business was interrupted prolonged the repair of the building or caused a
10 distinct suspension of operations. *Id.* Defendants do not cite to any evidence for this proposition.
11 Defendants concede that there were three occurrences with respect to personal property damage.
12 However, Defendants conclusively assert that there was only a single business interruption occurrence.

13 On summary judgment, the inferences to be drawn from the facts must be viewed in a light most
14 favorable to the party opposing the motion. *T.W. Elec. Serv.*, 809 F.2d at 631. Here, it is reasonable
15 to infer that there were additional occurrences of business interruption. There is no dispute that there
16 was a business interruption occurrence due to mold contamination which caused Plaintiffs to move out
17 of the building. One of the property damage occurrences involved a flooding of United Signs' building
18 caused by a contractor in July 2001, a month after Plaintiffs vacated the building and repairs on the
19 building commenced. This event resulted in an additional $40,000 property damage. Given the
20 substantial amount of property damage, it is reasonable to infer that it could have contributed to the
21 period of restoration of the building and thus resulted in an additional occurrence of business
22 interruption. Another property damage occurrence took place when some of the United Signs' office
23 equipment and furniture was destroyed, lost or stolen through negligence of the movers. It is reasonable
24 to infer that this event also resulted in an instance of business interruption in addition to the one caused
25 by mold infestation and flooding, since Plaintiffs had to rent new office equipment and furniture, and
26 replace computer and phone systems. Because these things usually do not happen overnight, it is

---

[8] Occurrence No. 1 in the personal property damage claim was mold contamination.

8

1 reasonable to infer that Plaintiffs' business was interrupted once again.[9]

2 Because there is a genuine issue of material fact with respect to how many occurrences of business interruption took place, the Court DENIES Defendants' First Motion for Partial Summary Judgment on the Plaintiffs' claim regarding $6,092 in additional business interruption/extra-expense benefits.

## B.     Insurance Bad Faith

Plaintiffs allege, *inter alia*, that Defendants breached the implied covenant of good faith and fair dealing by delaying the payment of benefits due under the policy. FAC ¶ 55. Defendants respond that they paid the appraisal award within the time required by the policy. The policy states: "We will pay for covered loss or damage within 30 days after we receive the sworn statement of loss, if: (1) [y]ou have complied with all of the terms of this Coverage Part; and (2) [w]e have reached agreement with you on the amount of loss or an appraisal award is entered." Goble Decl., Ex. A at POL 22. There is no dispute that Plaintiffs have complied with all of the terms of the relevant coverage part. The parties dispute, however, whether Defendants paid within 30 days after Defendants had reached agreement with Plaintiffs on the amount of loss or an appraisal award had been entered. The appraisal award was dated May 3, 2004. Goble Decl., Ex. H. Defendants assert that on May 28, 2004, they fully satisfied the award. *See* Motion at 12; Goble Decl., ¶¶ 8, 10. Thus, Defendants conclude that they did not unreasonably delayed payment of benefits.

Plaintiffs are considered "first-party" insured under California law, because they are making a claim on their own insurance company. California has a public policy favoring prompt payment to first-party insureds upon the occurrence of the insured-against event. *See, e.g., Gourley v. State Farm Mut.*

---

[9] Plaintiffs also cite to the following definition of the term "occurrence" in Couch on Insurance § 172:12: "[T]he number of acts producing injury or damage, rather than the number of injuries caused, is the key on which definition of 'occurrence' turns in interpreting a 'per occurrence' clause; multiple acts causing a single injury will constitute multiple occurrences, while a single act will constitute a single occurrence even though it causes multiple injuries or multiple episodes of injury." Based on this definition, Plaintiffs argue that each occurrence of property damage has contributed to and extended the business interruption loss. However, Plaintiffs have not been able to refer the Court to any cases applying this definition in the context of a business interruption claim. Defendants respond that the definition of "per occurrence" relied on by Plaintiffs applies only to property damage claims, and has not been extended to business interruption claims. Because the Court does not rely on Plaintiff's definition of "per occurrence" in its ruling on the business interruption claim, it declines to resolve the parties' dispute whether or not it applies to the instant claim.

9

*Auto. Ins. Co.* (1990) 227 Cal. App. 3d 1099, 1105. The rationale for this public policy is that the "major motivation for obtaining . . . insurance . . . [is] peace of mind." *Egan v. Mut. of Omaha Ins. Co.* (1979) 24 Cal. 3d 809, 818. The failure to make prompt payment breaches the implied covenant of good faith and fair dealing if the withholding of benefits is "unreasonable or without proper cause." *Love v. Fire Ins. Exch.* (1990) 221 Cal.App.3d 1136, 1151. The standard of reasonableness is often described as requiring the insurer to "give at least as much consideration to the . . . [insured's] interest as it does to its own." *Egan*, 24 Cal. 3d at 819. Reasonableness must be decided based on the information known to the insurance company at the time its action, or lack thereof, was taken. Thus, an insurer's delay or refusal to pay a claim can be reasonable even if the insured's claim has merit. *Franceschi v. American Motorists Ins. Co.*, 852 F.2d 1217 (9th Cir. 1988). If the underlying facts are undisputed, the court can decide the issue of reasonableness as a matter of law. *Id.*

Here, Defendants paid Plaintiffs what they considered to be a final amount in May 2004. Thus, approximately three years passed between Plaintiffs submitting their claim and receiving the payment. The law requires that Defendants not delay benefits due under the policy unreasonably. *Love,* 221 Cal.App.3d at 1151. In their moving papers, Defendants argued that their conduct was reasonable because genuine disputes existed between the parties in relation to Plaintiffs' claims against the policy. Before Plaintiffs' opposition was filed, the parties engaged in additional meet and confer discussions. Declaration of Peter Fredman ("Fredman Decl."), ¶ 2. Plaintiffs informed Defendants that they would bring a Federal Rule of Civil Procedure 56(f) request for time to conduct discovery with respect to Defendants' claim that there were genuine disputes between the parties prior to appraisal. In response, Defendants agreed to withdraw the argument. *See* Freedman Decl., ¶ 2 and Ex. 1. In reliance on that agreement, Plaintiffs did not file a Rule 56(f) request. Since Defendants no longer argue, for the purposes of this motion, that there was a genuine dispute between the parties on Plaintiffs' claims, Defendants cannot carry their burden of proving that the three-year delay in payment of benefits was reasonable. While it is true that Defendants made the payment promptly after the appraisal, since they do not argue that a genuine dispute as to Plaintiffs' claims existed prior to the appraisal, the fact finder could find it unreasonable that Defendants did not pay Plaintiffs, but instead forced Plaintiffs to go through an appraisal procedure.

Furthermore, the Court found a disputed issue of material fact with respect to the $6,092 in additional appraised but unpaid business interruption/extra expense benefits. It follows that there is a genuine issue of material fact with respect to Defendants' *full* satisfaction of the appraisal award after May 2004. If the fact finder concludes that Plaintiffs were entitled to those benefits, the fact finder could find it unreasonable that Defendants failed to make a payment to Plaintiffs even after the appraisal award was entered. Accordingly, the Court DENIES Defendants' First Motion for Partial Summary Judgment on Plaintiffs' insurance bad faith claim.

## C. Pre-Appraisal Interest

Defendants also move for partial summary judgment on Plaintiffs' claim for pre-appraisal interest. Reply at 8. However, they concede that if the Court denies them partial summary judgment with respect to the insurance bad faith claim, the Court must deny them partial summary judgment with respect to pre-appraisal interest. *See* Transcript at 38:19-21. Accordingly, the Court DENIES Defendants' First Motion for Partial Summary Judgment on the pre-appraisal interest claim.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT Defendants' Motion for Partial Summary Judgment [Docket No. 43] is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

Dated: 9/1/06

SAUNDRA BROWN ARMSTRONG
United States District Judge